IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KAABAR VENSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18-cv-07055 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| VAUGHN RUSSELL, et al. ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kaabar Venson was a prisoner at Stateville Correctional Center ("Stateville") when she fell down the stairs while correctional officers were escorting her and other prisoners to receive x-ray exams. Venson has filed this lawsuit pursuant to 42 U.S.C. § 1983 against Lieutenant William Brown, Lieutenant Charles Best, and Correctional Officer Vaughn Russell ("Defendants"), all Stateville correctional officers, alleging that they were deliberately indifferent to a substantial risk to her safety when they escorted her down the stairs while chained to other prisoners, in violation of her Eighth Amendment rights. Before the Court is Defendants' motion for summary judgment (Dkt. No. 54), in which they argue that Venson failed to exhaust her administrative remedies before filing suit as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). For the following reasons, Defendants' motion is denied.

BACKGROUND

Unless otherwise noted, the following facts are undisputed.

I.   **Administrative Grievance Procedures**

The Illinois Department of Corrections's ("IDOC") regulations establish grievance procedures for prisoners. *See* Ill. Admin. Code tit. 20, § 504.800 *et seq*. Prisoners are first

required to file a written grievance with their institutional counselor within sixty days after the discovery or occurrence of an issue, unless they can demonstrate good cause for an untimely filing. *Id.* § 504.810(a). The grievance must "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *Id.* § 504.810(c). If the prisoner does not know the names of the individuals involved, the prisoner "must include as much descriptive information about the individual as possible." *Id.* Grievances are then reviewed by a grievance officer who reports their findings and recommendations to the correctional facility's Chief Administrative Officer ("CAO") within two months, when reasonably feasible. *Id.* § 504.830. The CAO reviews the grievance officer's determination and provides the prisoner with a written decision. *Id.*

If they are dissatisfied with the CAO's decision, prisoners may appeal the decision to the IDOC's Director within thirty days. *Id.* § 504.850(a). The Administrative Review Board ("ARB"), appointed by the Director, reviews the record and submits a written report of its findings and recommendations to the Director. *Id.* § 504.850(d). Finally, the Director reviews the ARB's findings and recommendations and makes a final decision within six months, when reasonably feasible. *Id.* § 504.850(e).

**II.     April 2018 Grievance**

Around March 22, 2018, Venson fell while being escorted down the stairs at Stateville. (Pl.'s Resp. to Defs.' Statement of Facts ("PRDSF") ¶ 6, Dkt. No. 62.) Following the incident, Defendant Russell completed an incident report and forwarded it to Stateville's CAO. (Defs.' Resp. to Pl.'s Statement of Additional Facts ("DRPSAF") ¶¶ 1, 3, Dkt. No. 63.) The report describes how a group of prisoners, including Venson, fell while being escorted down the stairs

2

by a lead chain; they were then treated by medical staff. (*Id.* ¶ 2.) In response to the incident, Venson filed a grievance on April 20, 2018, which does not describe or name the Defendants nor does it allege that she informed Defendants of her inability to travel safely down the stairs. (PRDSF ¶¶ 7–8, 10.) On the grievance form, Venson did not check the "Staff Conduct" box, but she checked the "Medical Treatment" box and the "Other" box, handwriting the words "falling down the stairs." (PRDSF ¶ 9; DRPSAF ¶ 6.) The grievance details the fall, noting that Venson fell down the stairs while shackled with leg irons and with her hands locked in a lead chain. (DRPSAF ¶ 7.) Other prisoners fell on her head, neck, back, and legs during the incident. (*Id.*) The grievance also requested medical attention for injuries Venson claims to have suffered from the fall because she did not believe that she was receiving proper medical treatment. (PRDSF ¶ 11; DRPSAF ¶ 7.)

On May 31, 2018, Venson's correctional counselor responded to the April 20, 2018 grievance, referencing a medical report from the facility's nursing supervisor. (PRDSF ¶ 11; Defs.' Statement of Material Facts ("DSMF"), Ex. 2, Grievance Records 4/20/18, Dkt. No. 55-2.[1]) On June 12, 2018, Venson sent IDOC officials a request for copies of every grievance that she had submitted during her incarceration at Stateville in 2018 because she had not received responses on some of them. (DRPSAF ¶ 8.) The grievance officer recommended that Venson's

---

[1] Venson contends that her grievance record for the month of April does not provide any reason to conclude the correctional counselor's response was shared with her. The Northern District of Illinois's Local Rule 56.1, which governs motions for summary judgment, requires a party's response to an opposing party's statement of facts to "cite specific evidentiary material that controverts the fact" to adequately dispute an asserted fact; asserted facts may be deemed admitted without such specific citations. L.R. 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Because Venson failed to cite specific evidence, such as an affidavit stating that she never received the counselor's response, the fact will be deemed admitted.

3

request be denied, explaining that prisoners are provided copies of their grievances when the grievance receives a response. (*Id.* ¶ 8.)

Defendants claim that the grievance officer recommended that Venson's grievance be denied as moot on December 14, 2018. (PRDSF ¶ 13.) In contrast, Venson contends that the document was not finalized until sometime in February 2019, as the grievance officer's report mentions medical treatment Venson received in January 2019 and February 2019. (PRDSF ¶ 13; Grievance Records 4/20/18.) In the report, the grievance officer explains that the grievance should be denied as moot since Venson was receiving continued medical treatment for her medical problems. (DRPSAF ¶ 13.) The CAO concurred with the grievance officer's recommendation for the April 2018 grievance on February 25, 2019, and Venson appealed that decision to the ARB on March 5, 2019. (DRPSAF ¶¶ 14–15.) On March 14, 2019, the ARB responded to the grievance, stating that the grievance did not comply with the applicable regulations because it was not submitted within the required timeframe and no justification was provided for additional consideration. (*See* Grievance Records 4/20/18.)

### III. September 2018 Grievance

On September 19, 2018, Venson filed a grievance regarding her March 2018 fall, alleging misconduct by Defendants. (PRDSF ¶¶ 15–16.) Specifically, Venson wrote that she had informed Defendants that she could not walk down the stairs cuffed and chained to other prisoners because of her preexisting injuries. (DRPSAF ¶11.) (Venson claims to have suffered injuries to her hip, face, and back, from an attack by other prisoners prior to this incident. (Second Am. Compl. ¶ 8, Dkt. No. 16.)) Venson submitted the form directly to the ARB, reasoning that it had been several months since the March incident and she had yet to receive a response to the many grievances she had filed. (DRPSAF ¶¶ 10–11.) Venson disputes Defendants' characterization of the September

2018 grievance as a separate grievance from the April 2018 grievance; instead, she asserts that the September grievance was a continuation of the April grievance. (PRDSF ¶¶ 15–16.) Regardless of the characterization, the September grievance does not list the date of Venson's fall down the stairs. (*Id.* ¶ 17.)

The ARB returned Venson's grievance on September 26, 2018. (PRDSF ¶ 18; DSMF, Ex. 3, Grievance Records 9/19/18, Dkt. No. 55-3.[2]) Defendants assert that the ARB returned the grievance because of the omitted date. (PRDSF ¶ 18; Grievance Records 9/19/18.) However, the ARB did not check the box on the Return of Grievance or Correspondence form for Venson to provide a date; instead, the ARB checked the boxes for "This office previously addressed this issue" and "No justification provided for additional consideration" under the heading "No further redress." (PRDSF ¶ 18; Grievance Records 9/19/18.) Furthermore, in the "Other" section, the ARB wrote "You provide no dates or month of incident. But our office has reviewed like claims on the above dates. No review will be given for this submission, further submissions will be FILED and not responded to." (*Id.*) Following its decision, the ARB did not receive any appeals or grievances from Venson related to the March fall incident between September 26, 2018 and October 16, 2018. (PRDSF ¶ 19.) Venson also did not file any other grievances concerning the incident. (*Id.* ¶ 19.)

In October 2018, Venson brought the present lawsuit under 42 U.S.C. § 1983. (PRDSF ¶ 5.) In her Second Amended Complaint, Venson alleges that Defendants were deliberately indifferent to a substantial risk to her safety when they forced her and other prisoners down the

---

[2] Venson claims that her grievance record for the month of September does not indicate that the ARB's response was provided to her. For the reasons discussed noted, the fact will be deemed admitted since she failed to cite specific evidence, such as an affidavit stating that she never received the ARB's response.

stairs, despite their knowledge of her preexisting injuries, her statement that she was unable to descend the stairs while shackled and chained to other prisoners, and the availability of a nearby elevator. (Second Am. Compl. ¶¶ 1, 14–15, 27.)

## DISCUSSION

In their motion for summary judgment, Defendants argue that Venson failed to exhaust her administrative remedies before filing suit. Summary judgment is appropriate if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, even after all reasonable inferences are drawn in the non-movant's favor. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The PLRA requires that prisoners exhaust all available administrative remedies prior to filing a federal action regarding prison conditions, including a § 1983 suit. 42 U.S.C. § 1997e(a). The Seventh Circuit takes a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "Unexhausted claims are procedurally barred from consideration." *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016). A prisoner fulfills the exhaustion requirement by complying with the specific procedures established by the prison's policy. *Hernandez v. Dart*, 814 F.3d 836, 841–42 (7th Cir. 2016). Because failure to exhaust is an affirmative defense, defendants carry the burden of proof. *Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018).

Exhaustion is not a requirement where administrative remedies are not "available" to a prisoner. *Hernandez*, 814 F.3d at 842. Thus, at the summary judgment stage, "defendants must

show beyond dispute that remedies were available." *Ramirez*, 906 F.3d at 534. The Supreme Court has noted three circumstances in which prisons may have an official administrative procedure for prisoners to submit grievances, but such procedure nonetheless is not "available" under the PLRA: (1) the procedure is essentially a dead end through which prisoners consistently fail to obtain relief; (2) the administrative procedure is so complicated and opaque that a typical prisoner could not navigate it; or (3) prison officials actively thwart prisoners' attempts to take advantage of the procedure. *Ross v. Blake*, 578 U.S. 632, 643–44 (2016). The Seventh Circuit has advised that "these were only examples, not a closed list." *Ramirez*, 906 F.3d at 538. For example, even if prison officials do not engage in affirmative misconduct, they may make remedies unavailable by "failing to inform the prisoner of the grievance process." *Hernandez*, 814 F.3d at 842. Additionally, a remedy becomes unavailable where "prison employees do not respond to a properly filed grievance." *Dole*, 438 F.3d at 809 (citing *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002)).

## I. April 2018 Grievance

With respect to the April 2018 grievance, Defendants assert that Venson failed to exhaust her administrative remedies because she did not follow the procedural rule requiring her to name or describe the individuals involved in the incident.

IDOC regulations require prisoners to include factual details in their grievances, including the names of the people involved in the incident or, if their identities are unknown, descriptive information about the individuals. Ill. Admin. Code tit. 20, § 504.810(b). The absence of any information indicating who is the target of a grievance constitutes a fatal defect. *See Roberts v. Neal*, 745 F.3d 232, 235–36 (7th Cir. 2014). But "[a] procedural shortcoming like failing to follow the prison's time deadlines amounts to a failure to exhaust only if prison administrators

explicitly relied on that shortcoming." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011); *see also Watkins v. Lancor*, 558 F. App'x 662, 664–65 (7th Cir. 2014) (determining that a prisoner exhausted his remedies, despite violating the prison's "one issue" rule for grievances, because officials decided his appeal on the merits; specifically, officials reasoned that the prisoner's concerns had already been addressed appropriately, and he provided no new information.);[3] *Lewis v. Pfister*, No. 18-CV-4502, 2019 WL 5577164, at *3 (N.D. Ill. Oct. 29, 2019) (finding that a prisoner exhausted his remedies, notwithstanding his failure to name or describe defendants in the grievance, since officials did not invoke that procedural rule when denying the grievance as untimely).

Here, it is undisputed that Venson did not name or describe Defendants in the April 2018 grievance. Nonetheless, Defendants cannot rely on this procedural shortcoming as IDOC officials did not explicitly invoke this rule when denying or returning Venson's grievance. Rather, the grievance officer addressed the claim on the merits and recommended that the CAO deny the grievance as moot because Venson was already receiving medical treatment for her issues. And the CAO later concurred with this assessment. According to ARB records, the ARB later returned the grievance because it was untimely submitted to the grievance officer, and no justification was provided for additional consideration. Since none of these documents reference a failure to identify responsible individuals as the reason for denying Venson's claim, that failure provides no basis to find that Venson did not exhaust her administrative remedies.

However, Venson's April 2018 grievance suffers from a more fundamental defect. A claim will not be considered administratively exhausted where the claim filed in federal court is

---

[3] *Watkins* is an unpublished Seventh Circuit order issued after January 1, 2007. Although not precedential, the order's reasoning is persuasive and provides a useful point of comparison here. *See* Fed. R. App. P. 32.1(a); 7th Cir. R. 32.1(b).

substantively distinct from the allegation made in the grievance. *See Bowers v. Dart*, 1 F.4th 513, 517–18 (7th Cir. 2021) (finding a prisoner failed to administratively exhaust his claim where his federal complaint alleged that correctional officers had advance notice of an attack by fellow prisoners but failed to protect him from harm, while his prison grievance alleged that correctional officers failed to come to his aid during the attack). A grievance should provide "notice to the prison of the nature of the wrong for which redress is sought." *Schillinger v. Kiley*, 954 F.3d 990, 995–96 (7th Cir. 2020) (internal quotation marks omitted) (concluding that a prisoner's grievance did not give adequate notice of his failure to protect claim where the grievance alleged that the prison guards did not sufficiently aid him during an attack but did not reference events preceding the attack or misconduct by officers mentioned in the federal claim).

Venson's April 2018 grievance failed to provide adequate notice to the IDOC of Venson's claim for deliberate indifference to her safety. Although the grievance describes how Venson fell down the stairs while shackled and chained to other prisoners, it does not allege any wrongdoing by Defendants, such as the correctional officers forcing her to go down the stairs. The grievance also failed to state that Venson informed Defendants of her inability to travel safely down the stairs. Furthermore, Venson only requested proper medical attention as relief. Thus, the sole alleged wrongdoing that could be gleaned from the April 2018 grievance is the failure to provide Venson with proper medical treatment, which would implicate the facility's medical staff but ***not*** the correctional officers who escorted her down the stairs during her fall. In contrast, Venson's § 1983 claim before this Court alleges that Defendants acted with deliberate indifference to a substantial risk to Venson's safety when they forced her and other prisoners down the stairs, despite knowing about her preexisting injuries, that she was unable to safely walk down the stairs while shackled to other prisoners, and the availability of a nearby elevator. For this reason, the

9

April 2018 grievance, which focused on issues with Venson's medical treatment, failed to exhaust Venson's administrative remedies with respect to her deliberate indifference claim that is the subject of the present lawsuit.[4]

## II.     September 2018 Grievance

The Court next addresses the September 2018 grievance and, specifically, whether Venson's failure to include the date of the incident on the grievance form means she failed to exhaust her administrative remedies.

To begin, unlike the April 2018 grievance, the substance of the September 2018 grievance relates to the issue of deliberate indifference to safety presently before this Court. For instance, the September 2018 grievance alleged misconduct by Defendants with respect to causing Venson's fall, such as Venson's claim that she informed Defendants that she would be unable to walk down the stairs because of her injuries and they told her to do it anyway. The grievance also sought disciplinary action against Defendants as one form of requested relief. Similarly, Venson's § 1983 claim here asserts that Defendants acted with deliberate indifference to a substantial risk to her safety when they forced her and other prisoners down the stairs despite knowing about her

---

[4] The Court notes that Venson and Defendants devote a significant portion of their briefing to addressing whether the IDOC unreasonably delayed its response to Venson's April 2018 grievance. But the Court need not reach the issue since the grievance did not exhaust Venson's administrative remedies for her present deliberate indifference claim for other reasons. Nonetheless, the Court observes that there appears to be a dispute of fact concerning whether Venson received any response to the April 2018 grievance between the counselor's response in May 2018 and the grievance officer's decision in December 2018. Venson contends that she received no response during that period. In Defendants' reply brief, however, they allege several new facts not included in either party's statement of facts or responses as reasons for the delay, such as Venson sending her grievance directly to the ARB once she received the counselor's response, the ARB returning Venson's grievance in June 2018 because Venson had not included the grievance officer's response, Venson then resubmitting the grievance to the grievance officer, and the grievance officer not receiving the grievance until late July 2018. *See* Defs.' Reply in Supp. of Defs.' Mot. for Summ. J. at 12, Dkt. No. 63. If not for the Court's independent determination that the April 2018 grievance failed to exhaust Venson's administrative remedies for her present §1983 claim, this dispute likely would be significant for assessing whether a delay made administrative remedies unavailable to Venson.

preexisting injuries and that she was unable to safely walk down the stairs while shackled to other prisoners. Nonetheless, four procedural deficiencies potentially could render the September 2018 grievance unexhausted: (1) Venson failed to include the date of the incident on the grievance form; (2) she submitted the grievance after the sixty-day deadline; (3) she sent the grievance directly to the ARB; and (4) she did not resubmit the grievance with the missing information or appeal the ARB's decision to the Director.

Defendants contend that Venson failed to exhaust her administrative remedies because she did not include the date of the incident in the grievance form, and she did not file another grievance or appeal the ARB's decision. IDOC regulations direct prisoners to include factual details in their grievances, including the date when the incident occurred. Ill. Admin. Code tit. 20, § 504.810(b). But exhaustion does not require prisoners to "go beyond the established system and guess at some other way of attracting the attention of prison authorities." *Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 833–34 (7th Cir. 2020). Prison officials can so obscure the administrative process that it becomes unknowable and, thus, unavailable, when they inform prisoners of errors in their grievances, but send conflicting messages on how to proceed. *See Reid v. Balota*, 962 F.3d 325, 327–30 (7th Cir. 2020) (finding remedies were unavailable to a prisoner because officials' communications left the prisoner with no conceivable next steps since the ARB checked the box for the prisoner to submit missing documents but did not check the box for him to return the grievance with the additional information requested); *Williams*, 957 F.3d at 833–34 (concluding that a prisoner exhausted all available remedies when the ARB returned the appeal as insufficient due to missing documents, but did not check the box to provide the missing materials).

Here, the ARB's response to Venson so obscured the administrative process that it made administrative remedies unavailable to her. As discussed previously, the Court deems admitted that Venson received the ARB's response to her September 2018 grievance. In its response, the ARB noted that Venson failed to provide a date for the incident; however, it did not check the box for her to return the grievance with the additional information requested. Instead, the ARB checked the boxes for "This office previously addressed this issue" and "No justification provided for additional consideration." Additionally, the ARB stated, "[O]ur office has reviewed like claims on the above dates. No review will be given for this submission, further submissions will be FILED and not responded to."

With this response, the ARB did not leave Venson with any conceivable next steps to take since it failed to indicate to her that she should resubmit the grievance with the missing date. To the contrary, the ARB actively discouraged Venson from additional action by informing her that it would not review that submission further or respond to any new submissions. It also stated it had addressed like claims on several dates, including April 20, 2018, which is the date of Venson's April 2018 grievance. Yet Venson had also not yet received a response from her grievance officer on her pending April 2018 grievance. Similarly, the Seventh Circuit in *Reid* found the ARB's response to be confusing when a prisoner submitted an additional grievance because he had not yet received a response to his prior grievance, but the ARB told him not to file any new grievances and did not mention his other pending grievance in its response. *See Reid*, 962 F.3d at 330. It is reasonable to believe that Venson thought she would not receive a response to her April 2018 grievance, nor a response to any subsequent submissions for the September 2018 grievance, such as a resubmission or appeal. Considering the conflicting messages she received in response

12

to her September 2018 grievance, the Court finds that administrative remedies were unavailable to Venson.

Even if Venson did not receive the ARB's confusing response to her September 2018 grievance, the result would be no different. To the contrary, Venson's claim that administrative remedies were unavailable to her would arguably be stronger. As previously noted, officials' failure to respond to a prisoner's grievance is grounds for finding a remedy to be unavailable. *Reid*, 962 F.3d at 329. If Venson did not receive the ARB's response, Defendants would not be able to satisfy their burden to prove administrative remedies were available to her. *See Pyles*, 829 F.3d at 863–64 (finding that a prisoner had exhausted the remedies available to him where he testified that he did not receive the grievance officer's response, having submitted the grievance in March 2013 and filed his lawsuit in July 2013).

The untimeliness of Venson's September 2018 grievance also presents no barrier to Venson's federal claim. IDOC regulations require prisoners to file their grievance with a grievance officer within sixty days of the occurrence of an incident. Ill. Admin. Code tit. 20, § 504.810(a). Venson's September 2018 grievance clearly was not filed within sixty days of the March 2018 fall incident. But, as noted previously, officials' failure to rely explicitly on untimeliness or other procedural shortcomings when responding to a grievance precludes them from relying on that argument for purposes of arguing a failure to exhaust. In their briefing, Defendants briefly note that Venson's September 2018 grievance was untimely although they do not further develop this point. *See* Defs.' Mem. in Supp. of Defs.' Mot. for Summ. J. at 6, Dkt. No. 56. Regardless, the ARB's response failed to indicate that the September grievance was untimely or that the ARB was rejecting the grievance for that reason, which bars Defendants from now advancing that argument as a grounds for dismissal of this lawsuit. The ARB's response also

13

did not state that Venson should have first submitted the grievance to the correctional counselor and grievance officer, as mandated by IDOC regulations. Therefore, Defendants are precluded from raising these errors as procedural hurdles to Venson's federal claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment based on their affirmative defense of failure to exhaust administrative remedies (Dkt. No. 54) is denied.

ENTERED:

Dated: October 14, 2022

_____
Andrea R. Wood
United States District Judge